## BRAUER v. MACBETH.

(Circuit Court of Appeals, Second Circuit. April 12, 1905.)

No. 166.

1. CONTRACT—TIME FOR PERFORMANCE—SPECIFYING DAY FOR PERFORMANCE.

Where a contract by its terms is to be performed on a day named, both parties have the whole of the business day in which to tender performance.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Contracts, § 957; vol. 45, Cent. Dig. Time, § 53.]

2. SALE—ACTION FOR BREACH OF CONTRACT—QUESTIONS FOR JURY.

Plaintiff entered into a contract with defendant for the purchase of a vessel, title to which was to be transferred at a place and on a day stated, together with her "unexpired insurance fully paid." Plaintiff was at the same time and place to make payment in accordance with the terms of the contract. In an action for breach of the contract, it was shown that plaintiff's agent and defendant met at the designated time and place in the forenoon, when defendant stated that he had obtained assignments of some of the insurance policies, but other underwriters refused to transfer, and he offered to obtain new insurance for the deficiency, or new insurance for the entire amount, for the unexpired term of the old policies. There was evidence on behalf of defendant that after some discussion plaintiff's agent went out, stating that he would return at 2 o'clock; also that defendant could have procured the required insurance, and otherwise complied strictly with the terms of the contract before the close of the day, but no formal tender of full performance was made. *Held*, as determined on a prior hearing, that the insurance offered, if in reliable companies, met all the requirements of the contract, and that defendant had the full day in which to perform or tender performance; also, that plaintiff could not recover if performance was prevented by the action of his agent, which was a question for the jury.

In Error to the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon writ of error to review a judgment of the Circuit Court, Southern District of New York, entered upon verdict of a jury in favor of defendant in error, who was defendant below. The same controversy was before this court sub nomine. Livermore v. Brauer, 128 Fed. 265, 62 C. C. A. 647. It is concerned with the disposition of a fund of some $10,000 deposited by Brauer with Livermore, to be held by the latter until a certain contract of sale should be carried out by the vendors, Macbeth & Gray, when said sum should be paid to them as part of the purchase money; with the further proviso that if the vendors failed to carry out their agreement, the deposit should be returned to the vendee, while, if the vendee defaulted, it should be paid to the vendors as liquidated damages. The contract of sale provided (inter alia) that the vendors, Macbeth & Gray (Gray is since deceased), would on or before February 1, 1901, execute and deliver to Brauer or his nominee the necessary documents to vest in him good title to the steamer Dunmore, "her fixtures, tackle, equipment and the materials and stores on board, and her unexpired insurance fully paid, as she stood on December 15, 1900, free and clear of all incumbrances, together with all the earnings of said vessel from and after Dec. 15, 1900, under the charter party under which she sailed Dec. 16, 1900." The vendee agreed to pay some £7,000, with interest, in cash, to give an order on Livermore for the $10,000, and to execute and deliver a purchase money mortgage for £11,900; all of which payments were to be made in Glasgow, Scotland, on or before February 1, 1901. Reference to other facts will be found in our former opinion.

138 F.—62

Ira D. Warren, for plaintiff in error.
J. Parker Kirlin, for defendant in error.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts). The time and place of performance of the contract was Glasgow, February 1, 1901, and each party had the whole of business hours on that date to complete what the contract required him to perform. Concededly, on that day Macbeth had not procured assignments of all the identical insurance policies which were on the vessel December 15, 1900, and he could not have procured them that day, since two underwriters (to the extent of £2,500) had absolutely refused to make any transfer. A large part of the brief for plaintiff is concerned with the proposition, which is abundantly settled by authority, that, when a party to a contract has stipulated that he is to receive a certain specified thing, he cannot be compelled to accept something else which the other party, or even a jury, may think is "equally good." But that question is not presented on this appeal. This court has construed the clause in the contract "and her unexpired insurance fully paid, etc.," as meaning that to the extent to which the ship was covered by insurance on December 15, 1900, Macbeth & Gray were obligated to vest the vendee on February 1st with fully paid policies issued by underwriters as good at least as those which were underwriting her on December 15, 1900. And it was held in that opinion that, "if Macbeth & Gray had made tender of such insurance at the interview in Glasgow, they would have satisfied the condition." That is the law of this case, and its acceptance materially reduces the subjects of discussion presented on this appeal.

The court charged the jury that the defendant had the whole of the business day of the 1st of February in which to perform; a proposition which does not seem to be questioned. Indeed, both sides had the whole of that day, and it is therefore immaterial whether either, at the beginning of that day, was in a position instanter to complete the business, except as the condition of preparedness or unpreparedness might assist the jury in determining the question, which was submitted to them, whether performance was possible, and would have been carried out, had the course of proceedings not been interfered with. And it was held on the former appeal that, if the evidence should show that the plaintiff deprived Macbeth & Gray of an opportunity of tendering performance, he could not insist upon their default. There are widely different stories of just what took place in Macbeth's office in Glasgow on February 1st. Defendant's story is that, after explaining the situation as to the old policies and some discussion thereon, he offered to Mr. Warren, Brauer's representative, to give him new equivalent insurance for the small amount that could not be transferred or, if desired, for the whole amount of insurance that was on the vessel, and that there would have been no difficulty in obtaining such new insurance in Glasgow in straight full-paid Lloyds policies

that same afternoon at a small expense; that, as to the accumulated earnings under the charter party, he was fully prepared to pay them there and then, as soon as some arrangement was come to as to what should be done touching the insurance; indeed, it would seem that the amount of cash due from Macbeth to Brauer for charter earnings was less than the £7,000 due under the contract from Brauer to Macbeth; that the question as to insurance was still under discussion when Warren temporarily withdrew, indicating that he would return certainly by 2 o'clock to renew the negotiations, which would then be carried to a consummation. Plaintiff's story is that, when Warren was informed as to the situation touching the insurance policies, he said that he was not authorized to accept the proposals made by Macbeth, turned around, and walked out of the office. Upon such a conflict of evidence the jury only could decide. According to defendant's story, he was not, as plaintiff argues, concededly in default, unable to comply strictly with the terms of his contract, and negotiating to secure the acceptance of an alternative. Construing the clause as to insurance as this court has construed it, he was not yet in default, and was, as he testified, able to give the kind of insurance called for as soon as the other side should flatly refuse to receive any part in the other kind. By their verdict the jury have found (on evidence sufficient to sustain their finding, if they believed defendant's story) that Brauer's representative had agreed to return at 2 p. m.; that had he done so, and then stated that he would not accept any of the old insurance, part of it not being as yet actually transferred, and most, if not all of it, being in so-called "club policies," which might fairly be considered as not "fully paid," Macbeth could easily have procured, and tendered him long before the close of the business day, Lloyds policies for the full amount which under the former decision he was entitled to give, and could at the same time have tendered in cash the full amount of earnings under the charter party; and that he would have done both these things within the time allowed him for performance had Brauer's representative returned at the time indicated with a definite statement as to whether he would or would not accept any part of the old insurance, some of which had been in fact duly transferred. Under our former decision the court was bound to send those questions to the jury upon such conflict of testimony, and their verdict is conclusive, unless there was reversible error either in admission of testimony or in the charge.

Of the assignments of error which deal with the admission of evidence, some deal with the right of defendant to offer other insurance than such as was on the ship December 15, 1900, and are not separately discussed in the brief. Exception was reserved to a question which asked the witness whether on February 1st he was "prepared" to pay over the amount due upon the charter party. This did not necessarily call for a conclusion; no doubt it was understood by the witness and by the jury as inquiring if in fact at that time he had ready the money needed to pay the sum due. And if it did elicit a conclusion it was harmless, for cross-examina-

tion would have quickly shown just what the witness meant by "prepared."

Exceptions were reserved to testimony about Macbeth's efforts to get consents to the transfers of the old policies. It is not perceived how the testimony was harmful, even if the evidence were irrelevant, which is by no means clear. Other objections to testimony were not followed up by exceptions.

Many exceptions were taken to the charge. Some of them deal with so much of the charge as instructed the jury that the plaintiff must satisfy them that he had offered performance, and that defendant had substantially refused to perform. In view of the fact that there was conflicting evidence as to whether the £7,000 which plaintiff was to pay had even been brought to the place of meeting in a form which defendant was willing to accept as cash, the charge was entirely correct in that respect.

Exception was taken to the court's instructing the jury that they were to disregard defendant's offer to prove that he had sustained damages by reason of the failure of plaintiff to carry out the contract. This is clearly frivolous. Other exceptions are not much better.

Objection was taken to the statement that there was no consideration of equity in the case. The context shows that this statement merely cautioned the jury that the parties had reduced their rights to a written instrument, and that the case should be disposed of under its terms, not under any theory of hardship either way.

It was objected that the court remarked that evidently the vendors were not willing to give in December an option of purchase good till February 1st, thus cutting themselves off from the chance to sell the ship elsewhere, without requiring a deposit. This was manifest on the face of the contract itself.

So, too, it was objected that the court said the contract was drawn rather favorably to the plaintiff; but in the same sentence the court explained that the contract limited defendant's recovery in case of breach to $10,000, but left plaintiff free, in case of breach, to recover any damages he might be able to prove.

It would be a waste of time to go over all these minute criticisms of the charge, which very fully and fairly presented the evidence to the jury. We find no sound exception to any material part of it.

The judgment of the Circuit Court is affirmed.